545:15 LRA297n

The Consolidated Coal Company of St. Louis

*v.*

James D. Baker, Treasurer.

| 135 | 545 |
| 194 | 5  18 |
| 135 | 545 |
| 213 | 1286 |

*Filed at Mt. Vernon January 24, 1891.*

1.   Taxation—*coal lands—other minerals—stone quarry, etc.—mode of valuation—of distinct property interests therein.* The statute provides, that in valuing lands on which there is coal or other minerals, or stone or other quarry, the price and value of such mine or quarry shall be included. This requires the valuation of the mine or quarry, if any,

35—135 Ill.

and if there is no division of ownership it will all properly be assessed with the fee; but where the fee and the coal or quarry are owned by different persons, they may be assessed separately, as real estate.

2. Where coal underlying land is conveyed, or is reserved from a grant of the land, there will be two distinct property rights in the land, liable to assessment for taxation, but they should be assessed separately, according to the respective rights of such owners. The two assessments must equal the value of the land proper, augmented by the value of the coal or mine. The coal, when thus sold or reserved, is not personal property, and can not become such until severed from the land itself.

3. SAME—*application for judgment—collector's report—evidence—presumption.* On application of the collector for judgment for taxes, his return of the delinquent list, with the statutory notice and proof of its publication, makes out a *prima facie* case, and entitles him to judgment, in the absence of proof showing to the contrary.

4. It will be presumed, on such application, that the assessor and other officers charged with the levy and collection of taxes have done their duty, and have not made an illegal assessment or returned an illegal tax delinquent. The burden of showing matters in avoidance of the tax, or its illegality, is upon the person objecting thereto.

5. Where the return of the collector is according to law, the presumption of the legality of the assessment and validity of the tax is indulged until facts are shown that impeach their legality. If the tax, for any reason not appearing on the face of the return of the collector, is alleged to be illegal or improperly assessed, it devolves upon the objector to establish that fact.

6. CONVEYANCES—*coal underlying land—as a separable interest from the land proper.* Coal underlying land may be conveyed by deed or other instrument, so as to pass the title to the same, with the right to mine it. Such grant is more than a mere license to enter and mine the coal,—it is a conveyance of the coal itself as it lies in its natural state, and the subject of such grant is real property in the grantee, which is liable to taxation as such.

APPEAL from the County Court of St. Clair county; the Hon. J. B. HAY, Judge, presiding.

Mr. CHARLES W. THOMAS, for the appellant.

Mr. M. F. SCHAEFER, for the appellee.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was an application to the county court of St. Clair county, by the county treasurer of that county, for judgment for delinquent taxes for the year 1889. The assessor of the township in which the property was situate and assessable, had returned his assessment, conformably to law, of five tracts of land, assessing one of said tracts in the name of Louis Fuchs, one in the name of Francois Louis, one in the name of F. Schmisseur and L. DeKiem, one in the name of Casper Bertelsman, and one in the name of Mark Ward, and had also returned an assessment, in the name of appellant, "for the coal under" the same lands, upon which several assessments, taxes had been extended by the proper officer. It appears that the taxes extended upon the assessment of the lands had been paid, but the taxes upon the assessment of the coal underlying the same had become delinquent, and judgment was asked therefor in this proceeding. Appellant appeared in the county court and filed the following objections to the rendition of judgment, to-wit: "First, the coal is not assessable separately from the land in which it lies; and second, the taxes have been paid on the land in which the coal lies, and that land was assessed without excepting the coal." The court, upon consideration of the evidence, overruled the objections, and rendered judgment for said taxes, and the Consolidated Coal Company of St. Louis prosecutes this appeal.

It is insisted, first, that the burthen was upon the collector to show that the owners of the land had in some way sold and conveyed the coal underlying their lands, respectively, and having failed to do so, the objections should have been sustained. We are unable to concur in this view. The assessment was introduced in evidence, and the assessor called as a witness, who testified, that in making the assessment he decreased the value placed upon the land by the amount he placed upon the coal, and that "the superintendent of objector's

mines on the premises in which the coal is situated, told me the number of acres in each tract yet unmined, and I followed his statement" in making the assessment.

The collector's return of the delinquent list, with statutory notice and proof of publication, *prima facie* entitles the collector to judgment for the tax returned as delinquent. The presumption is, that the assessor, and other officers charged with the levy and collection of taxes, have done their duty, and have not made an illegal assessment or returned an illegal tax delinquent. We have repeatedly held that the burthen of showing such matters as would avoid the tax or establish its illegality is upon the person objecting thereto. (*Moore* v. *The People*, 123 Ill. 645; *Durham* v. *The People*, 67 id. 414; *Pike* v. *The People*, 84 id. 80; *Mix* v. *The People*, 81 id. 118; *Chiniquy* v. *The People*, 78 id. 570; *Brackett* v. *The People*, 115 id. 29.) Where the return of the collector is in conformity with the statute, the presumption of the regularity of the assessment and validity of the tax is indulged until facts are shown that impeach their legality. Here the tax was returned delinquent against the coal underlying the several tracts named, and the presumption must obtain that it was properly so assessed and returned, until the contrary is made to appear. It was peculiarly within the power of the objector to show the fact, and if, for any reason not appearing on the face of the return of the collector, the tax was improperly assessed, or was invalid, the burthen was upon the objector to establish it.

It is insisted, however, that under the revenue laws of this State, coal, and other substances which, in their natural state and *situs*, are part of the realty, can not be so severed from the ownership of the land, or the land itself, as to become separately taxable, and that therefore the assessment made upon the coal underlying these lands is void,—that the land having been assessed to the several owners thereof, and the taxes thereon duly paid, there was no further liability because of any substance upon or forming part of the land. The fourth

section of the Revenue act (Rev. Stat. chap. 120) provides: "Real property shall be valued as follows: First, each tract or lot of real property shall be valued at its fair cash value, estimated at the price it would bring at a fair, voluntary sale; second, taxable leasehold estates shall be valued at such a price as they would bring at a fair, voluntary sale for cash; * * * fourth, in valuing any real property on which there is coal or other mine, or stone or other quarry, the same shall be valued at such a price as such property, including the mine or quarry, would sell at a fair, voluntary sale for cash." And it is insisted that therefore, for the purposes of taxation, there can be no severance of the mine from the land, but, as before said, the value of the mine must be included in the valuation of the land, however separated by contract or severally held and owned.

Section 1 of article 9 of the constitution of this State provides, "that the General Assembly shall provide such revenue as may be needful by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property." Construing the provisions of the Revenue law quoted, in the light of this provision of the constitution, it would seem that the question was, whether appellant had or could have held, by deed of conveyance or lease, such an interest in the coal underlying these lands as would be property, and assessable as land.

By the statute of New York, the term "land," as used in the law relating to property liable to taxation, etc., is, by statute, to be construed "to include the land itself, including land and water, all buildings and other articles erected upon or affixed to the same, all trees and underwood growing thereon, and all mines, minerals, quarries and fossils in and under the same." In *Smith* v. *Mayor, etc., of New York*, 68 N. Y. 552, it was held, that under the definition of "land" thus given, "one may be taxed as owner of the fee of the land, and another for the trees, buildings and other structures thereon, and the minerals and quarries therein;" and it was there held that a pier built upon

the land of the city by the appellant, Smith, was real estate, within the meaning of the statute, and taxable as such, although built upon the land of another. So in *The People* v. *Cassidy*, 46 N. Y. 46, where the question was as to the right to tax the track of a street railway placed in the streets of a city, as land, it was held to be land, within the statute. The ground was there taken that it was not real estate, but the court, by Folger, J., said: "The statute means, for its purpose, to make two general divisions of property: one, all lands, another, all personal property; and then, to be more definite, it declares that by land is meant the earth itself, and also all buildings and other articles erected upon or affixed to the same. We do not think that when buildings or other articles are erected upon or affixed to the earth, they are not, in the view of the statute, land, unless held and owned in connection with the ownership of the fee in the soil. We are of opinion that the statute means that such an interest in real estate as will protect the erection or affixing thereon and the possession of the fixtures, will bring such building and fixtures within the term 'lands,' and hold them to assessment as the land of whomsoever has that interest in the real estate and owns and possesses the buildings and fixtures." See, also, *The People ex rel.* v. *Commissioners of Taxes, etc.* 10 Hun, 207, and *The People ex rel.* v. *Board of Assessors*, 93 N. Y. 308. In the latter case it was expressly ruled that it was competent for the parties, by contract, to regulate their several interests in the real estate, so that one might own the buildings and the other the fee, and holding that the buildings, in such case, were properly assessed as land.

We do not deem it necessary to extend this opinion by citation from other courts. Our statute provides, that in valuing lands on which there is coal or other mine, or stone or other quarry, the price and value of such mine or quarry shall be included. This necessarily requires a valuation of the mine or quarry, and if there is no division of ownership,

it will all properly be assessed with the fee.   It is, however, a matter of common knowledge that the coal underlying lands is conveyed by deed or other instrument, so as to vest the coal, with right of mining the same, in another than the owner of the fee.   Ordinarily, perhaps, there is an absolute conveyance of the coal or other mineral, with a lease of sufficient of the surface for shafts, etc., at which to deliver the coal from the mine; or it may be mined by entries from other adjacent lands, without entering upon the surface of the particular tract of land upon which the coal is situated.   The grant is more than a mere license to enter and mine the coal,— it is a conveyance of the coal itself, as it lies impacted between the strata of stone, slate or clay, in a state of nature.   The title passes to it as property.   It is true, its value must be added to the valuation of the land, but it by no means follows that it must be assessed with it.   The parties have created two distinct properties in the same land,—one holding one property right in the land, and the other a distinctly separate property interest therein.   The statute, as before said, when read in view of the constitutional provision quoted, would require the assessment to be made in the names of the persons or corporations holding such property interests in the land.   True, the total assessment must equal the value of the land augmented by the value of the coal or mine, but the assessment of each should be made separately, according to the several holdings, to the end that each "shall pay a tax in proportion to the value of his, her or its property."   The coal thus conveyed or reserved by the grantor of the land is not personal property, and can not be until it is severed.   By the conveyance of it an interest in the land itself passes to the grantee,— the ownership of portions of the constituents of the land,—and falls within the designation of real estate, for the purposes of taxation.

This question was before us in *In re Major*, 134 Ill. 19, and we there held, that where the grantor had reserved from the

conveyance the coal, etc., underlying the land conveyed, it was properly assessed for taxation separately. This holding is criticized by counsel, and we have been thereby led into the foregoing discussion. In that case, after quoting the provision of the constitution before herein quoted, we said: "We think it clear that the mining right and right to the coal and minerals reserved in the deeds and contracts must be regarded as property, within the meaning of the foregoing provision." That case is, as we have seen, supported by abundant authority, and upon careful reconsideration of the question we are fully satisfied with the principle there announced.

The judgment of the county court in this case was fully warranted, and must be affirmed.

*Judgment affirmed.*